UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLOS PETERSON,

                                Petitioner,

    vs.                                                           9:10-CV-821
                                                                      (GTS/ATB)
SUPERINTENDENT,

                                Respondent.
_____

CARLOS PETERSON, Petitioner, *pro se*
PAUL M. TARR, Asst. Attorney General for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction rendered in the Onondaga County Court on September 17, 2008. Petitioner was convicted after a jury trial of two counts of Assault, Second Degree,[1] Criminal Mischief, Fourth Degree,[2] Criminal Trespass, Third Degree,[3] and Resisting Arrest.[4] Petitioner was sentenced to consecutive five year prison terms on each count of assault, which were to run concurrently with

---

[1] N.Y. Penal Law § 120.05(3).

[2] N.Y. Penal Law § 145.00(1).

[3] N.Y. Penal Law § 140.10.

[4] N.Y. Penal Law § 205.30.

concurrent prison terms of one year each on the criminal mischief and resisting arrest convictions. Petitioner was sentenced to time-served on the criminal trespass conviction and was sentenced to five years of post-release supervision. The Appellate Division, Fourth Department affirmed his conviction on March 19, 2010, and the New York Court of Appeals denied leave to appeal on May 27, 2010. *People v. Peterson*, 71 A.D.3d 1419 (4th Dep't ), *lv. denied*, 14 N.Y.3d 891 (2010).

Petitioner raises one ground for this court's review:

(1)  The evidence was insufficient to convict petitioner of Assault, Second Degree.

(Amended Petition (AP) at p.5)[5] (Dkt. No. 12). Petitioner has also filed "Letters" in support of his petition, containing photographs (Dkt. Nos. 9, 13-15, 18), and he filed an "Affidavit in Support of Habeas." (Dkt. No. 27). Respondent has filed an answer and memorandum of law, together with the pertinent state court records. (Dkt. Nos. 39-41). The state court records are also listed in respondent's answer.[6] (Dkt. No. 40 ¶ 7(a)-7(g)). Respondent argues that petitioner's claim of insufficient evidence is meritless. For the following reasons, this court agrees with respondent and will recommend that the petition be denied and dismissed.

---

[5] On July 16, 2010, petitioner was ordered to file an amended petition or risk dismissal. (Dkt. No. 8). The amended petition was filed on July 23, 2010. (Dkt. No. 12).

[6] The state court records, filed in Dkt. No. 39, and listed as Exhibits A through F, consist of the parties' Appellate Division briefs (Exs. A, B); the Appellate Division decision, affirming the conviction (Ex. C); petitioner's application for leave to appeal to the New York Court of Appeals and the People's opposition thereto. (Exs. D, E); and the New York Court of Appeals denial of leave to appeal (Ex. F). The transcripts of the trial and sentencing are not designated with an Exhibit-letter, but are filed as Dkt. Nos. 39-7 and 39-8. Any citation to the trial transcript will be (T.).

# DISCUSSION

I. <u>**Facts**</u>

The charges against this petitioner arose from an incident early in the morning of May 4, 2008. The events leading up to the incident are not in dispute. At approximately 6:00 a.m., several uniformed Syracuse Police officers responded to a burglar alarm at the True Vine Baptist Church on Rich Street in the City of Syracuse. (T. 127, 158, 192, 232). Officer David Walsh was the first to arrive at the scene and testified that he heard the alarm going off in the church and noticed that there was an open window with mud all along the sill and along the side of the building. (T. 129). He noticed that the window screen had been popped out, bent, and damaged. (T. 129). Officer Walsh looked inside the window and saw the silhouette of a person moving. (T. 130).

The officer determined that there had been a break-in and that there was someone still inside the building, so he sent that information over the radio and "set up a perimeter" around the church while he waited for other officers to arrive. (T. 130). Officer Walsh testified that Fred James, the Deacon of the church, arrived to open the door for the officers. (T. 131). Officer Charles Lester testified that he and Officer Walsh entered the building and announced their presence. (T. 233). There was no response, and they began a search of the building. (T. 234).

The officers found petitioner lying on the floor, covered with mud, and sweating profusely. (T. 133). Officer Walsh testified that he and Officer Lester ordered petitioner to stand up and raise his hands so that the officers could make sure

that he had no weapons. (T. 133). As the officers approached the petitioner to put handcuffs on him, he put his hands down and started "swinging" at Officer Lester. (T. 134). When the officers attempted to grab petitioner's arms again, he broke free and tried to run to the back of the church. *Id.* Petitioner stopped when he reached the back of the church and turned to face the officers. *Id.* When they tried to put him in handcuffs again, he began throwing punches at the officers. *Id.*

While Officers Walsh and Lester were attempting, for the second time, to put handcuffs on petitioner, the officers were joined by Officer David Demand, who managed to get one handcuff on petitioner's wrist. (T. 135). Petitioner kept "swinging," and at one point, he tried to choke Officer Lester. *Id.* Officer Walsh testified that they struggled with petitioner for four or five minutes before they subdued him. (T. 136). Officer Walsh testified that the fight went to several locations in the church, and that one of the church pews at the back of the church was damaged during the altercation, and there was mud on the pew from the petitioner's shoes. (T. 137).

Officer Demand also testified that, as he went to place handcuffs on petitioner, he began "violently" resisting. (T. 160). At one point, petitioner had Officer Demand by the throat and was choking him. (T. 161). Officer Demand testified that he was thrown over one of the pews and suffered some red marks on his neck. (T. 162). One of the other officers stopped petitioner from choking Officer Demand, however, the fight continued. (T. 162). Officer Demand testified that he used pepper spray on petitioner in an attempt to subdue him. (T. 163).

Officer David Glisson testified that other officers entered the church while he stood near the open window. (T. 193). Officer Glisson stated that he heard the commands being given by the other officers because it was "fairly dark inside," and he could not see what was going on through the window. (T. 193). He then heard "a lot of loud crashing, banging noises, and a few minutes later, observed a couple of the officers and the suspect fall right in front of the open window. (T. 194). He testified that he observed fighting, and that the suspect was fighting back. *Id.* At that point, Officer Glisson took out his taser, reached through the window, and applied it to petitioner's leg. (T. 196, 198). However, the petitioner continued to fight back, even after being stunned by the taser. (T. 198). Officer Glisson moved the taser to another part of petitioner's leg and attempted to stun petitioner again. (T. 198). At that point, Officer Lester called to Officer Glisson to "get in here," because the petitioner was still fighting back, and the officers needed Officer Glisson's help. (T. 199).

Officer Glisson testified that he entered the church, approached the fight, and stunned petitioner with the taser again. (T. 200). Officer Glisson then attempted to grab the petitioner's legs, but he continued to kick and force his way out of the officer's grasp. (T. 201). After a short time, they were finally able to control petitioner and get both of the handcuffs on his wrists in order to take him into custody. (T. 201). Officer Glisson testified that later, he noticed that his elbow was "quite sore," so he asked a nurse at the hospital to get him some ice. (T. 205). He later sought treatment from his own physician, who prescribed Motrin and a course of physical therapy. (T. 205-206). At the August, 2008 trial, Officer Glisson was still attending physical

5

therapy sessions, three times per week, and wearing an arm band to support his arm. (T. 205-206). He testified that he did not have the problem with his arm before the incident on May 4, 2008. (T. 205).

Finally, Officer Charles Lester testified about the altercation with petitioner. Officer Lester testified that sometime during the fight, petitioner swung at Officer Lester and hit him in his right eye. (T. 236). Later, petitioner grabbed Officer Lester's throat and began choking him, such that Officer Lester began to lose his breath. *Id.* Petitioner then threw Officer Lester to the ground and landed on top of him. (T. 237). Officer Lester was concerned that petitioner was trying to pull at the officer's service revolver. (T. 237). Petitioner continued to fight, and Officer Lester testified that petitioner had Officer Demand by the throat, and that Officer Demand's face was "turning bright red." (T. 239).

Petitioner was pulled away from Officer Demand by the other officers. *Id.* Petitioner was swinging the handcuff around, and Officer Lester gave him "three knee strikes" to the side of petitioner's body to try to make him stop. (T. 240). Officer Lester also hit petitioner with pepper spray in an attempt to slow him down. *Id.* Officer Lester testified that he also received abrasions on his left shin and a small laceration on his right writst. (T. 241). Officer Lester testified that, in the days following the incident, his right eye continued to swell, and it became "black and blue." (T. 242). He felt discomfort and pain in his eye for "a couple of days after that." (T. 243).

Petitioner testified in his own defense. He admitted breaking into the church

6

with a screwdriver that he had obtained from a friend who lived near the church. (T. 283). Petitioner testified that he walked eight miles in the pouring rain to break into the church because he had smoked some bad marijuana, his skin was burning, and he knew that if he went into the church, he would feel better. (T. 281-84). At first, when he raised the window with the screwdriver, he only put his hands in the open window. (T. 283-84). However, he stated that this was not "good enough" to get relief from the burning, so he climbed through the window into the church. *Id.* Although he heard the burglar alarm go off when he got into the church, he stayed, "just trying to get relief." (T. 284).

Petitioner testified that when the police entered the church, he was hoping that they were going to take him into custody. (T. 285). Petitioner testified that the officers began hitting him immediately, and that he never tried to hit the officers because he never had the chance. *Id.* He stated that the officers hit him with some quick blows, hit him with their flashlights, pepper sprayed him, and tasered him. *Id.* Petitioner claimed that the police never tried to put handcuffs on petitioner because they began beating him immediately. (T. 287). He also testified that he never ran around the church because the officers beat him in one spot. *Id.* He stated that, at one point, he was "out conscious [sic]" and "barely breathing." *Id.*

## II. **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254

> unless the adjudication . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).  *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)) (alterations in original).[7]  Clearly established federal law "means 'the holdings as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (alterations in original).

In order to apply this standard under the AEDPA , the petitioner's claim must have been "adjudicated on the merits" in the state court proceedings.  28 U.S.C. § 2254(d)(1).  *See also Day v. Taylor*, 459 F. Supp. 2d 252, 256 (S.D.N.Y. 2006) (a federal court's ability to review a habeas petition depends on whether the state court adjudicated the petitioner's claims on the merits or on procedural grounds).  Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1).  If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*.  *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

---

[7] Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact.  *Thompson v. Keohane*, 516 U.S. 99, 107-113 (1995).  When presented with these questions, the court was empowered to conduct an independent review of the record.  *Id*.

A decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts," or if the state court identifies the appropriate legal standard, but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 413.  The lower court may not grant the writ if it concludes "in its independent judgment" that the state-court decision applied clearly established federal law erroneously or incorrectly; rather, the application must also be unreasonable. *Id.* at 411.  In order for the application to be "unreasonable," there must be "some increment of incorrectness beyond error," but that increment may not be too great, otherwise habeas relief would be limited to those state court decisions that are "so far off the mark as to suggest judicial incompetence." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

### III. Sufficiency of Evidence

#### A. Legal Standards

The Due Process Clause of the Fourteenth Amendment prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  Consequently, a state prisoner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307,

9

324 (1979). In evaluating sufficiency, the evidence must be viewed in the light most favorable to the prosecution. *Id*. at 318-319. When considering the sufficiency of the evidence of a state conviction, a habeas court must look to state law to determine the elements of the crime. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002).

A habeas court must defer to the assessments of the strength of the evidence and credibility of the witnesses that were made by the jury. *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence, *Id.,* and this evidence must not be reviewed piecemeal, but rather as a whole. *United States v. Khan*, 53 F.3d 507, 513 (2d Cir.1995). Hence, a petitioner bears a "very heavy burden" in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence. *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir. 2002) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir.1993)). When the court is faced with a record that "supports conflicting evidentiary inferences," it must presume under *Jackson*, that the trier of fact resolved any conflicts in favor of the prosecution, and the court must defer to that resolution. *Laurey v. Graham*, 596 F. Supp. 2d 743, 760 (W.D.N.Y. 2009).

    **B.**    <u>**Application**</u>

In this case, the Appellate Division clearly decided the petitioner's sufficiency of evidence issue on the merits. The court held that "the assault conviction is supported by legally sufficient evidence establishing that both victims, each of whom was a police officer, sustained a physical injury . . . ." 71 A.D.2d at 1419. The court discussed the injuries sustained by each of the two officers and concluded that they

were "'more than mere petty slaps, shoves, kicks, and the like.'" *Id.* (citation omitted). The court, thus, saw no reason to disturb the jury's verdict. *Id.* Because the Appellate Division's determination of the constitutional issue was clearly "on the merits," the deferential AEDPA standard applies.

Under New York law, a defendant is guilty of Assault, Second Degree under N.Y. Penal Law § 120.05 (3) if, "[w]ith intent to prevent a peace officer, [or] a police officer . . . from performing a lawful duty . . . he or she causes physical injury to such peace officer, [or] police officer." On appeal, and in this habeas petition, petitioner argues that there was insufficient evidence to establish that the officers sustained "physical injury." In this habeas application, petitioner has filed photographs of himself after the incident, arguing that he sustained injuries that were worse than those sustained by the officers, and that the officers assaulted him.

N.Y. Penal Law § 10.00(9) defines "physical injury" as an "impairment of physical condition or substantial pain." In order to prove the element of physical injury, the prosecution need only establish that the officer/victim's injuries were more than "'mere petty slaps, shoves, kicks, and the like.'" 71 A.D.2d at 1419 (citing *People v. Oree*. 58 A.D.3d 473, 474 (1st Dep't), *lv. denied*, 12 N.Y.3d 819 (2009)). In *People v. Oree*. the court stated that even "relatively minor injuries causing moderate, but 'more than slight or trivial pain' may suffice . . . as may injuries that did not lead to any medical treatment." *Id.* (citations omitted).

The court notes that the defendant in *Oree* also filed a federal habeas corpus petition in the Southern District of New York, based upon insufficient evidence of

11

physical injury. *Oree v. Conway*, 10 Civ. 4346, 2011 WL 710602 (S.D.N.Y. March 1, 2011) (Report-Recommendation of Hon. Andrew J. Peck, M.J.). On March 1, 2011, Magistrate Judge Peck recommended denial of the petition. *Id.* Magistrate Judge Peck stated that the New York Court of Appeals has held that "substantial pain" means more than "slight or trivial pain." *Id.* at * 12 (citing *inter alia People v. Chiddick*, 8 N.Y.3d 445, 447, 834 N.Y.S.2d 710, 711 (2007)). The pain need not be severe or intense to meet the definition of "substantial." *Id.* In *People v. Chiddick*, the court found sufficient evidence to establish physical injury where the defendant bit the victim's fingernail, causing it to crack and causing the finger to bleed, the victim testified that the pain was between a little and a lot, and the victim sought medical treatment for the wound. *Id.*

In *Oree v. Conway*, the court found that there was "ample evidence" that the detective sustained a "physical injury." 2011 WL 710602, at *12. The detective testified that when he tackled Oree, his hand and knee struck the pavement with substantial force, he suffered a large abrasion on his knuckle, with bleeding, and a small abrasion on his knee for which he received medical treatment. *Id.* The next day, the detective had swelling and bruising on his hand and knee, and had trouble getting up the stairs. *Id.* He took only Tylenol for the pain, which lasted for more than one week. *Id.* Magistrate Judge Peck then cited other cases in which the court found sufficient evidence of physical injury. *Id.* at *13 & n.18 (citing *inter alia Foster v. Miller*, 04 Civ. 7990, 2007 WL 1893726, at *8 (S.D.N.Y. June 29, 2007) (evidence sufficient where petitioner punched victim in the head and face, causing a split lip,

headaches, lasting two or three days, and pain persisting for a week that was treated with Tylenol); *Coke v. Superintendent, Green Haven Correctional Facility*, No. 06-CV-811, 2010 WL 475274, at *3 (W.D.N.Y. Feb. 5, 2010) (evidence sufficient to show physical injury where petitioner hit victim with a belt on her right calf, causing a cut, some bruising and pain, lasting for over a week, interfering with her ability to get dressed and play sports)).

In this case, one of the officers sustained a black eye, which continued to cause him pain for several days, and the other officer sustained an injury to his arm for which he sought medical treatment, was prescribed physical therapy, and for which he was still wearing a brace four months later at the trial. The jury was entitled to make the determination that the officers sustained sufficient injury to find petitioner guilty of the crime charged beyond a reasonable doubt. The extent of petitioner's injuries were irrelevant if the jury also found that the the officers also sustained physical injuries inflicted by petitioner. After reviewing the evidence presented at trial in the light most favorable to the prosecution, this court finds that the Appellate Division did not act contrary to *Jackson v. Virginia* when it refused to disturb the jury determination and held that the evidence was sufficient to convict petitioner of Assault, Second Degree under N.Y. Penal Law § 120.05(3).

## IV.    Certificate of Appealability

The court notes that an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254 may only be taken upon the issuance of a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may be issued

only if the applicant has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2). *See Miller v. Cockrell*, 537 U.S. 322, 326 (2003). Because this court has found that the claims raised by petitioner in this case do not make a substantial showing of the denial of a constitutional right, the court will recommend denial of a certificate of appealability.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: March 28, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge